Per Curiam.
(Absent Tilghman C. J.) Let the argument on the rule to shew cause proceed. In a criminal case the Court will receive a motion, in arrest of judgment at any time within the Term. It is not necessary, that it should be made within the four days. These rules are not to be. rigidly *128 enforced in criminal cases where injustice would be the consequence of doing so.
The leading features of the argument, on the rule to shew cause, being noticed in the opinion of the Court, it is unnecessary to detail them.
Tilghman C. J. did not sit during the argument.
The opinion of the Court was delivered by
Gibson J.
The powers delegated to juries, by the act of 1805, to regulate the payment of costs on indictments, if exercised with proper discretion, will prove highly beneficial. The subjecting a defendant, who has been acquitted, to the payment of costs, at first view, may appear unjust. We attach to an acquittal, the idea of perfect innocence, and it is perhaps right, it should generally be considered so. But when we reflect, that by the common law, a defendant, though acquitted, always paid costs, and that in this state, the law continued to be so, up to the 20th March, 1797, when it was changed by act of assembly, we may, perhaps, view the case of a defendant, acquitted of actual crime, but whose conduct may have been reprehensible in some respects, or whose innocence may have been doubtful, as not a very hard one, when left precisely as it was at the common law. The act of 1797, and that of 1805, are in pari materia, and to be taken together. Independent of technical construction, the only reason of apparent weight, in support of the motion, is, that a verdict of acquittal, on a defective indictment, would put the defendant in a worse condition than a conviction; as in the latter case he might get clear of the costs, by having the judgment arrested. This is very true; but the same thing often happened before the legislature interfered at all on the subject, and besides, the defendant has it in his power, now, as he always had, to put an end to the prosecution, before trial, by a demurrer, or a motion to quash; and if he be acquitted under circumstances of disadvantage, it is his own fault. There is, therefore, no hardship in the case; nor is there any absurdity in a defendant, in such case, being subjected to costs. The judgment is not on the indictment, but on something collateral to it. The defendant is' not punished for a matter of which he stood indicted; *129 (for he is acquitted of every thing of that sort,) though, on account of something, of which he was not indicted, some impropriety.of conduct, or ground of suspicion, which the verdict of the jury has fastened on him, the statute law refuses to interfere in his behalf, and leaves him as he stood at the common law. What matters it, then, whether the crime of which he was indicted, (which is the direct accusation,) be well charged or not? He is not in a worse condition, than if he had been acquitted on a perfectly good indictment. I grant, that a statute imposing costs, is penal in its nature, and must be construed strictly; and this is the strongest point of the argument. Hence, it is said, if the defendant be not indicted of an offence, according to the legal and technical meaning of the word, he is not subjected to the power of the jury. The first section of the act of 1805, after providing, that the grand jury returning a bill ignoramus, in any “ prosecution,” except in case of felony, shall decide and certify, whether the county or the prosecutor shall pay the costs, proceeds to state, that “ in all cases of acquittal by the petit jury, on indictments for the offences aforesaid, the jury trying the same, shall determine by their verdict, whether the county or, the prosecutor, or the defendant, shall pay the costs of prosecution.” What is the import here of the word offences P No offences are previously mentioned except felonies, which are entirely exclu-, ded from the operation of the act; prosecutions, however, are mentioned, to which only the word offences, used as it is, relatively, can refer. And this fixes the meaning attached to this word by the legislature; it is equivalent to prosecutions ; and, therefore, the distinction endeavoured to be drawn between this case and The Commonwealth v. Harkness,(a) entirely fails. Here certainly was a prosecution, and that brings the case within the letter. But were it otherwise, I am not aware, the word offence, like that of prime or misdemeanour, has a technical meaning, or that it intrinsically imports the perpetration of an act, punishahle by the criminal laws of the country. There may, I apprehend, be acts, such as certain kinds of fraud, that are offensive to morality, that nevertheless are not indictable; though it is a general maxim, that every thing contra bonos mores, is indictable. The word, therefore, does not, ex vi termini, *130 import an act, that is a crime or misdemeanour. I cannot distinguish Harkness’s, case from the present. There is but one reason for fixing costs on a prosecutor, that does not apply with equal force to the case of a defendant, and it is, that the prosecuting of a defective indictment, is rather an aggravation than an extenuation of malicious conduct; but it is a circumstance, that only marks the greater extent and degree of misconduct, and has nothing to do with the principle on which punishment is to be inflicted, where it cannot be graduated to the exact demerit of the party. Where-ever misconduct may be fairly imputed, either to a prosecutor or a defendant, they respectively become obnoxious to this kind of legal animadversion, although neither guilty of, nor technically charged with a crime. It is very clear, that all the counts in the indictment are bad; but, as we are of opinion that cannot avail the defendant, the rule must be discharged.
Rule discharged.

 4 JBirni. 194.